IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-629 T
(Judge Christine O.C. Miller)

PETER J. AND JEANNE LOCKE,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

**MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT**

The United States respectfully moves this Court, pursuant to RCFC 12(b)(1), for an order dismissing the complaint, on the ground that this Court lacks jurisdiction over the subject matter. In support of its motion, the United States relies on the following memorandum and the exhibits attached to the Declaration of Joseph B. Syverson filed simultaneously herewith.

**STATEMENT**[1]

Plaintiffs filed their joint income tax return for tax year 1994 on October 2, 1998. (Syverson Dec. Ex. 4 at 1; Ex. 1 at 2.)[2] Their 1994 return reported a total tax due of $9,929.00.

[1]The complaint, which is styled "Complaint for Wrongful Levy by IRS," does not identify the tax year or years involved in this suit. The Internal Revenue Service's administrative files indicate that amounts received by means of levies were applied to plaintiffs' outstanding unpaid liabilities for their tax years 1994 and 1997. Accordingly, based on the assumption that those tax years are at issue in this suit, the Statement deals primarily with those years.

[2]Hereinafter, exhibits attached to the Syverson Declaration will be cited as "Ex. __."

(Ex. 4 at 2.) Plaintiffs did not include any payment with their return, and, on November 16, 1998, were assessed $9,929.00 in tax for the 1994 tax year (the amount reported on their 1994 income tax return), $512.00 in estimated tax penalty, $2184.38 in failure-to-pay-tax penalty, and $4,524.65 in interest. (Ex. 1 at 2.) On August 9, 1999, the estimated tax penalty and $19.47 in interest were abated. (*Ibid.*)

Plaintiffs also filed their joint income tax return for tax year 1997 on October 2, 1998. (Ex. 5 at 1; Ex. 2 at 2.) Their 1997 return reported a total tax due of $7,965.00. (Ex. 5 at 2.) Plaintiffs did not include any payment with their return, and, on November 9, 1998, were assessed $7,965.00 in tax for the 1997 tax year (the amount reported on their 1997 income tax return), $92.00 in estimated tax penalty, $278.77 in failure-to-pay-tax penalty, and $371.48 in interest. (Ex. 2 at 2.) On August 9, 1999, the failure-to-pay-tax penalty was abated, and on December 6, 1999, $3,251.00 of tax was abated. (*Ibid.*)

On February 9, 2004, the IRS sent to plaintiffs notices of intent to levy with respect to their unpaid liabilities for tax years 1994 and 1997, and also sent notices of intent to levy with respect to tax year 2002, on July 26, 2004. (*See* Ex. 1 at 3; Ex. 2 at 3; Ex. 3 at 3; Ex. 11 at 2.) On August 25, 2004, plaintiffs' counsel mailed to the IRS a Form 12153 (Request for a Collection Due Process Hearing), for tax years 1990 through 1993, and 1997. (Ex. 6 at 1, 8.) Per plaintiffs' counsel's instructions, the IRS treated this request as a request for a hearing with respect to plaintiffs' 1994 and 2002 tax years as well. (Ex. 11 at 2; Ex. 9 at 1; Ex. 3 at 3.) The request was timely with respect to tax year 2002 (and thus entitled to appeal rights), but untimely

with respect to the other tax years.[3] (Ex. 11 at 2.) Notwithstanding the untimeliness of the request with respect to tax years 1991 through 1994 and 1997, plaintiffs were entitled to an "equivalent hearing" for those years. (*Ibid.*)

In an exchange of correspondence between the Appeals Officer and plaintiffs' counsel regarding scheduling of the hearing, plaintiffs were informed that they could lodge a request with the Appeals Office for an alternative to the proposed levy (such as an installment agreement or offer in compromise). After being advised that an offer in compromise "based on doubt as to liability" had already been submitted prior to the request for a collection due process hearing with Appeals, the Appeals Officer responded by letter of November 3, 2004, indicating that it was "imperative" that she be notified within two weeks whether plaintiffs wished to withdraw their request for a collection due process hearing with the Appeals Office; if not, she would have to take action on the request (which would be on the papers rather than in person, pursuant to plaintiffs' request). (Ex. 11 at 3-5.)

When no response from plaintiffs was forthcoming, the Appeals Officer reviewed the information in the file and concluded, based on that information, that the proposed collection action–levy of plaintiffs' property–should be sustained. (Ex. 11 at 1, 3-5.) Her recommendation was approved, and the Appeals Office issued plaintiffs "decision letters" for the 1994 and 1997 tax years, on May 5, 2005 (Ex. 11 at 1; Ex. 9 at 1; Ex. 10 at 1), and a notice of determination[4] for

---

[3]Treasury Regulations § 301.6330-1(b)(1) provides that the taxpayer must submit a request for a collection due process hearing within the 30-day period that begins on the day after the date of the notice of intent to levy. *See* 26 U.S.C. § 6330(a)(3)(B).

[4]A decision letter is issued when, as here, the IRS determines that a taxpayer has made an untimely request for a collection due process hearing for a tax year, but holds an equivalent hearing. *See* Treas. Reg. § 301.6330-1(i). A notice of determination, by contrast, is issued

the 2002 tax year, on January 29, 2005.[5] (Ex. 3 at 3.)

Following the resolution of plaintiffs' requests for collection due process hearings, the IRS began to levy plaintiffs' social security benefits pursuant to 26 U.S.C. § 6331(h),[6] to satisfy their outstanding assessments for the 1994 and 1997 tax years. Final Notices Before Levy on Social Security Benefits were mailed to plaintiffs for the 1994 tax year on May 15, 2006 and July 3, 2006 (Ex. 1 at 6), and for the 1997 tax year on June 26, 2006. (Ex. 2 at 6.) Plaintiffs' social security benefits were levied on August 9, 2006 in the amount of $184.80 and on September 1, 2006 in the amount of $81.00; these amounts were credited against plaintiffs' 1994 tax liability (Ex. 1 at 7.) On September 13, 2006, plaintiffs' social security benefits were levied in the amount of $184.80, and credited against plaintiffs' 1997 tax liability. (Ex. 2 at 6.)

In their complaint, styled as a "Complaint for Wrongful Levy by IRS," plaintiffs allege that "[t]he IRS has wrongfully levied [them]," and they ask for "a return of their money with interest." (Complt. ¶ 1.) Plaintiffs further allege ( ¶14) that the levies were made when they had a pending offer in compromise, and were in a "protected" "Collection Due Process Status."

---

following a collection due process hearing pursuant to 26 U.S.C. § 6330, and constitutes a "determination" within the meaning of § 6330(d), giving rise to appeal rights. *See* Treas. Reg. § 301.6330-1(f)(1).

[5]The IRS Appeals Officer's Appeals Case Memorandum, submitted December 15, 2004, recounts the administrative history underlying the levies for 1994 and 1997. (Ex. 11 at 2-5.) This history was repeated virtually verbatim in the attachments accompanying the letters sent to plaintiffs from the Appeals Office on May 5, 2005. (Ex. 9 at 2-3; Ex. 10 at 2-3.)

[6]The Secretary of the Treasury is authorized under 26 U.S.C. § 6331(h) to levy upon "any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee." § 6331(h)(2)(A). A levy made under § 6331(h) is "continuous from the date such levy is first made until such levy is released," and, with an exception not applicable here, attaches to a maximum of 15 percent of the federal payment levied upon. § 6331(h)(1).

Finally, they allege (¶ 15) that the levies violated constitutional Due Process and Takings Clauses.

## ARGUMENT

## THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE COMPLAINT

### A. This Court Lacks Jurisdiction over Plaintiffs' Wrongful Levy Claims

Plaintiffs maintain that this is an action "for wrongful levy by the IRS." Compl. ¶ 1. Although this Court and its predecessor, the Court of Claims, have held that they have jurisdiction over wrongful levy claims generally under the Tucker Act, 28 U.S.C. 1491(a)(1), the Court does not have jurisdiction over the claims in this case because plaintiffs allege that they were levied upon to satisfy their own tax liabilities, not the tax liabilities of others.

#### 1. This Court's Tucker Act jurisdiction over wrongful levy claims does not extend to levies imposed to satisfy plaintiffs' own tax liabilities

In *Gordon v. United States*, 649 F.2d 837 (Ct. Cl. 1981), the Court of Claims held that it had subject matter jurisdiction over wrongful levy claims under the Tucker Act, 28 U.S.C. § 1491, reaffirming its previous holdings that it had such jurisdiction under an implied in fact contract theory. *See id.* at 838 (citing *Kirkendall v. United States*, 31 F. Supp. 766, 769-70 (Ct. Cl. 1940)). The issue in *Gordon* was whether the enactment of 26 U.S.C. § 7426 in the Federal Tax Lien Act of 1966, Pub. L. No. 89-719, 80 Stat. 1125 (1966), deprived the Court of Claims of this jurisdiction. *See Gordon* at 838. Section 7426(a)(1) provides in relevant part as follows:

> *Wrongful Levy*. — If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

The *Gordon* court rejected the United States' argument that, by enacting the Federal Tax Lien Act, Congress intended to deprive the Court of Claims of wrongful levy jurisdiction by expressly granting such jurisdiction only to the district courts in § 7426(a)(1). *See Gordon* at 839-43. *Gordon* reached this conclusion in principal reliance on an American Bar Association report contained in the legislative history of the Federal Tax Lien Act that made specific mention of the Court of Claims's Tucker Act jurisdiction over wrongful levy claims. *See id.* at 840-41. Relying on this report, *Gordon* reasoned that, because Congress was aware of the Court of Claims's wrongful levy jurisdiction yet did not unambiguously remove it, Congress intended to preserve the Court of Claims's wrongful levy jurisdiction. *See id.* at 842-43.

This Court's wrongful levy jurisdiction under the Tucker Act, however, extends only to claims brought by third-parties to recover funds levied from them to satisfy the tax liabilities of others. This was made clear in *Kirkendall*, where the Court of Claims first held that it had jurisdiction to hear wrongful levy claims. There, the Court rejected the United States's argument that the plaintiff should have availed herself of the procedures for bringing a refund claim, reasoning as follows:

> The defendant contends that this money, having been applied to taxes due by Hartzell under the Revenue Law and no timely refund claim having been made by the plaintiff, or her husband, cannot now be recovered. It is only necessary to say that a refund claim is an appropriate action under the revenue statutes to recover money paid as taxes when made by the party who paid the tax. There is no claim that either Kirkendall or the plaintiff paid, or had assessed against them, any taxes, and certainly a refund claim would not have been an appropriate action for them to take.

*Kirkendall* at 769. Thus, the *Kirkendall* court limited its holding that the Tucker Act provides a basis for jurisdiction to hear wrongful levy claims to cases where the plaintiff was not "the party

who paid the tax." *Id.* Subsequent opinions confirm this limitation on wrongful levy jurisdiction under the Tucker Act. *See, e.g., Tchakarski v. United States*, 69 Fed. Cl. 218, 222 (2005) (citing *Gordon* for the proposition that "the United States Court of Federal Claims has jurisdiction to hear third party levy contests"); *Document Management Group, Inc. v. United States*, 11 Cl. Ct. 463, 467 (1987) (citing *Kirkendall* for the proposition that "[i]mplied-in-fact contract jurisdiction provides relief where a third party is levied"); *Gordon* at 839 (Tucker Act grants "jurisdiction to hear third-party levy actions").

This limitation on Tucker Act jurisdiction in wrongful levy actions deprives this Court of subject-matter jurisdiction over plaintiffs' wrongful levy claims. The levied funds that plaintiffs seek to recover in this action were levied to satisfy plaintiffs' own tax liabilities for the 1994 and 1997 tax years. Thus, under *Kirkendall* and *Gordon*, this Court lacks jurisdiction over plaintiffs' wrongful levy claims, because they are not based on levies made to satisfy the tax liabilities of a third party.

**2. No other statutory provision provides this Court with subject-matter jurisdiction over plaintiffs' wrongful levy claims**

Plaintiffs contend that, in addition to Tucker Act jurisdiction under *Gordon*, 26 U.S.C. § 7426 provides this Court with subject-matter jurisdiction over plaintiffs' wrongful levy claims. *See* Complt. ¶ 3. This contention is mistaken. Although § 7426(a)(1) does permit a person to bring a wrongful levy claim, provided that the person is someone "other than the person against whom is assessed the tax out of which [the] levy arose," it only expressly permits such an action to be brought "in a district court of the United States," not in the Court of Federal Claims. Thus, § 7426 does not provide an alternate basis for jurisdiction in this Court over plaintiffs' wrongful

levy claims.[7]

Furthermore, no other statutory provision provides this Court with jurisdiction over plaintiffs' wrongful levy claims. To the extent that plaintiffs seek return of the money levied to satisfy their outstanding tax liabilities, their complaint is really a complaint for a tax refund, not a complaint for wrongful levy.

Plaintiffs, however, must follow the statutory procedures for seeking a refund of tax, if that is what they seek. They must fully pay the disputed tax and file a timely claim for refund with the IRS, before filing suit for refund in this Court. *See* 26 U.S.C. §§ 7422(a), 6532(a); *Flora v. United States*, 362 U.S. 145, 150 (1960); *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993); *see also* RCFC 9(h)(6). Plaintiffs, however, have neither pleaded any of the required jurisdictional facts for prosecuting a tax refund suit nor fully paid the assessed tax for 1994 and 1997 (the tax years to which the levied funds were applied). *See* Ex. 1 at 8; Ex. 2 at 8.

Plaintiffs' failure to follow the procedures required for bringing a refund suit also undermines their allegation (¶¶ 5, 6) that this Court has subject-matter jurisdiction over their claims by virtue of its jurisdiction over claims for statutory interest on tax refunds. This Court's jurisdiction over a claim for statutory interest on an overpayment of taxes is dependent upon a

---

[7]*Gordon* is not to the contrary. In *Gordon*, the Court of Claims did hold that Congress, in enacting the Federal Tax Lien Act of 1966, intended to apply 26 U.S.C. § 6532(c), the statute of limitations applicable to wrongful levy actions brought under § 7426(a)(1), to wrongful levy actions brought in the Court of Claims under the Tucker Act, rather than the 6-year statute of limitations in 28 U.S.C. § 2501 ordinarily applicable to actions brought under the Tucker Act. *See Gordon* at 843-44. The *Gordon* court, however, did not hold that the Federal Tax Lien Act of 1966 supplanted the Tucker Act as the jurisdictional basis for wrongful levy actions in the Court of Claims. *See id.* at 842, 843 (noting that § 7426 provides for equitable remedies not available in this Court, and holding that "Congress did not intend [§] 7426 to withdraw Tucker Act jurisdiction of third-party levy contests from this Court").

determination that plaintiffs have in fact overpaid their taxes and are entitled to a refund. *Cf. Overseas Thread Indus., Ltd. v. United States*, 48 Fed. Cl. 221, 225 (2000) ("A refund claim implicitly carries with it a claim for statutory interest, and thus no separate claim is required to claim interest.") As this Court lacks jurisdiction over plaintiffs' suit for refund, it cannot make such a determination, and hence lacks jurisdiction over plaintiffs' claims for statutory interest.

Finally, although not expressly invoked in the complaint, plaintiffs may be alleging that this Court has jurisdiction to consider their claims that the levies were wrongfully imposed, as an appeal from a final determination in a collection due process hearing conducted pursuant to 26 U.S.C. § 6330. *See* Compl. ¶ 14 (alleging that plaintiffs were "in a Collection Due Process Status, which . . . allows for a protected collection status from enforced activities such as a levy"). To the extent plaintiffs are making such an allegation, they are mistaken, because this Court does not, as a general matter, have jurisdiction over appeals from collection due process proceedings. The version of § 6330(d)(1) that applies to the final collection due process determination plaintiffs received for the 2002 tax year provides, in pertinent part:

> *Judicial Review of Determination.* — The person may, within 30 days of a determination under this section, appeal such determination—
>
> (A) to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter); or
>
> (B) if the Tax Court does not have jurisdiction of the underlying tax liability, to a district court of the United States.[8]

This provision places jurisdiction over collection due process appeals exclusively in the district courts and the United States Tax Courts, and thus does not give this Court jurisdiction over

[8] Congress has since amended § 6330(d)(1) to vest jurisdiction over collection due process appeals exclusively with the Tax Court. Pub. L. 109-280, 120 Stat. 780, § 855(a) (Aug. 17, 2006).

collection due process appeals. *See Fry v. United States*, 72 Fed. Cl. 500, 504-05 (2006).

### 3. This Court Lacks Subject-Matter Jurisdiction over the Constitutional Claims

In addition to a count for wrongful levy, the complaint alleges that the levies violated plaintiffs' rights under both the Due Process Clause and Just Compensation Clauses of the Fifth Amendment (and the Fourteenth Amendment's Due Process Clause). This Court does not have subject matter jurisdiction over plaintiffs' claims under any of these Clauses.

Although the Tucker Act gives this Court jurisdiction over claims against the United States that are "founded upon . . . the Constitution," 28 U.S.C. § 1491(a)(1), its jurisdiction over constitutional claims is restricted to those that "require the payment of money damages . . . ." *Murray v. United States*, 817 F.2d 1580, 1582-83 (Fed. Cir. 1987) (citing *United States v. Mitchell*, 463 U.S. 206, 218 (1983)). Consequently, the Court of Federal Claims lacks subject-matter jurisdiction over Due Process claims because they do not require the payment of money. *Fry* at 507; *Inter-Costal Xpress, Inc. v. United States*, 49 Fed. Cl. 531, 542 (2001).

Finally, this Court does not have subject-matter jurisdiction over plaintiffs' Fifth Amendment takings claims. Although this Court generally has jurisdiction over takings claims because they require the payment of money, collection of a tax liability by means of a levy is not a Fifth Amendment taking. *Fry* at 508-09; *Castillo Morales v. United States*, 19 Cl. Ct. 342, 345 (1990) ("where . . . a taxpayer disputes an IRS levy on its property, the appropriate course of action is a direct challenge of the levy, not the prosecution of a fifth amendment claim").

## CONCLUSION

For the reasons stated, the complaint should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

January 5, 2007

s/ Joseph B. Syverson

JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

January 5, 2007

s/ Mary M. Abate
Of Counsel